HYMIE (JAIME) GAOING AND LETICIA T. GAOING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gaoing v. Commissioner
Docket No. 3313-79.
United States Tax Court
T.C. Memo 1982-18; 1982 Tax Ct. Memo LEXIS 733; 43 T.C.M. (CCH) 297; T.C.M. (RIA) 82018; January 12, 1982. *733 Stephen Y. Lau, for the petitioners. Thomas G. Schleier, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 1,590 in petitioners' Federal income tax for 1974 and an addition to tax in the amount of $ 80 under section 6653(a). [1] The issues for decision are whether Leticia T. Gaoing received $ 5,000 in unreported commissions in 1974 and, if so, whether the omission of these commissions from her income tax return for that year was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Petitioners Hymie (Jaime) Gaoing and Leticia T. Gaoing, husband and wife, were legal residents of Waipahu, Hawaii, when they filed their petition. On or before April 15, 1975, they filed a joint Federal income tax return for 1974. On January 11, 1971, Leticia T. Gaoing (hereinafter petitioner or Leticia) arrived *734 in Hawaii from the Philippines. Sometime after her arrival and prior to March 1973, she began work for a travel agency called Aveco Travel (Aveco). From March 1973 through May 1974, petitioner worked as the manager of a travel agency known as Bayanihan World Tours and Travels, Inc. (Bayanihan). After taking maternity leave from May to September 1974, she began employment as the president [2] of a travel agency named Martin's Travel Agency of Hawaii, Inc. (Martin's) where she continued to work during all of 1975. Petitioner received a gross salary of approximately $ 600 per month from these employers and received no other compensation from them. In the notice of deficiency respondent determined, in substance, that petitioner received for her own benefit commissions from Philippine Airlines (PAL) in the amount of $ 5,000 during 1974 which should be added to her reported income. In the light of all the evidence, we find that petitioner has not established that this determination was erroneous. As manager of Bayanihan, petitioner's duties were *735 to "sell travel" and market airline tickets to the public; as president-manager of Martin's, she handled similar tasks. Petitioner testified that at no time did she have a personal contract or employment relationship with PAL. She also testified that, while working for Aveco in approximately 1971, she first met Jose R. Rey (Rey), who served as the district sales manager of PAL during 1974. All of her dealings with him, she testified, were conducted on behalf of her employer. Rey testified at trial, however, that he made three or four cash payments to petitioner in 1974 totaling at least $ 5,000. He stated that he made these payments on behalf of PAL and that they represented "overriding" or "incentive" commissions, over and above the normal commissions; Rey also described them as "under the table" payments. He testified that he would call petitioner alone into his private office, where he would give her currency in a plain white envelope containing $ 1 to $ 100 bills. Petitioner would usually acknowledge the money by signing a receipt, which he then transmitted to PAL's office in San Francisco. In her original petition filed March 15, 1979, petitioner alleged that she did *736 not receive any commission income. In her amended petition filed May 11, 1979, petitioner alleged that she never received the specific sum of $ 5,000 as commissions in 1974. At trial, however, she stated on direct examination that: "If there was any payment from Joe Rey, * * * it was not for me, it was for the company I was working for." On cross-examination, petitioner answered the question "did you receive any currency from Jose Rey during 1974?" with a simple "Yes." She continued to assert, however, that such sums were received for the benefit of her employer-companies, [3] and hence were not income to her. She stated that the receipt of these extra commissions was recorded on the companies' books but no such books or records were produced at trial. The factual issue to be determined, then, is what happened to the currency admittedly accepted by petitioner. Rey testified that he did not know the final destination of the commissions. He stated further that he dealt with petitioner because she was in charge of the travel agency. From this testimony, petitioner would *737 have us infer that she accepted the money in her capacity as travel agency manager or president and that, as a conscientious employee, she forwarded it to her company. We think petitioner asks us to infer too much from this fragment of Rey's testimony. We think it highly unlikely that PAL would have made currency payments to a travel agency employee in the surreptitious manner described by Rey if the payments represented ordinary commissions for the agency's services. Bearing in mind that petitioner has the burden of proving respondent's determination erroneous, , Rule 142(a), we conclude in the light of all the evidence that petitioner has not shown that she did not receive for her own benefit an unreported $ 5,000 in personal income in 1974. Our conclusion takes into account the difficulties normally inherent in proving a negative--that petitioner did not receive the $ 5,000 from PAL for her own benefit. Our holding rests largely upon our evaluation of petitioner's credibility. We simply do not find convincing her hedging statement that "if" she received money, it went to her employers. Her testimony in this respect *738 was inconsistent with the allegations in her pleadings. In her petition and amended petition, she denied the receipt of currency; at trial and on brief, she grudgingly admitted it. We can conceive of no reason why, if she received the currency on behalf of her employer, she so reluctantly made the concession. Also, we think it unlikely that PAL would have settled with the travel agencies for the regular commissions and later paid "incentive" commissions to them in currency. Moreover, we think that her failure to present corroborating books or records of which, she, as manager and president, was presumably aware and could have subpoenaed, raises the presumption that such documents would prove unfavorable. ; ; , affd. . Petitioner attempted at trial to discredit Rey's testimony by pointing to certain inconsistencies. [4] The slight disparties in his testimony as to dates we find unimportant. Petitioner has admitted *739 the essential point of Rey's testimony--that he paid extra cash commissions to her in 1974. We have only his word for the amount of those payments, but he consistently stated that the sum totaled at least $ 5,000. Petitioner produced no evidence to establish a smaller amount. We think she received $ 5,000 in extra cash commissions which she retained and which respondent correctly determined was includable in her income. As to the second issue, petitioner produced no evidence showing that the underpayment we have found was not due to negligence or intentional disregard of the rules and regulations pursuant to section 6653(a). [5] Petitioner has not sustained her burden of proof on this issue, , Rule 142(a), and we hold that the addition to tax was correctly imposed. *740 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. All "Rules" references are to the Tax Court Rules of Practice and Procedure.↩
2. The stipulation states that Leticia was president of Martin's, while her testimony sometimes refers to her position as manager.↩
3. It is unclear whether the money was paid while petitioner worked for Bayanihan or Martin's or both.↩
4. Rey stated that he met petitioner in 1968 or 1969 when she testified that she did not arrive in Hawaii until 1971; he stated that she worked at Bayanihan until Sept. 1974, when she actually left in May of that year.↩
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩